Good morning, Your Honors. May it please the Court. My name is Anna Benvenu, appearing on behalf of Petitioner Devinder Singh. So today the Court is reviewing a Real ID Act credibility decision in which the agency based its credibility finding on three separate criteria. One, alleged implausible testimony, inconsistencies, and also a demeanor finding. All three of these bases cannot support, the agency's findings cannot be supported by substantial evidence on any of these grounds. With regard to the implausible testimony here, this Court must reject the Board's finding that Mr. Singh's inability to testify about, quote, key figureheads and events, which purportedly demonstrated his political activity and involvement, undermined his credibility. This finding is entirely based on speculation. It's inappropriate for the agency. Let me say, you can't rely on speculation, but you can rely on common sense. I think that's our famous line on that point. So here apparently the IJ found, based on his testimony, that he was passing out flyers for this individual who was martyred for a rally in his behalf, but he didn't know who the figure was or what a martyr was. So it does seem like there's certainly some common sense to say that it's implausible that he was involved in putting together this rally when he didn't know the basic information about the rally he was trying to get people to go to. Sure. Why is that not supported by substantial evidence? I think the main issue here is he testified that he was publicizing a rally. He was passing out flyers to invite people to come to a rally. He knew what the rally was for. It was to celebrate a martyr, Karnal Singh Isroo, and other martyrs. He did define martyr, he just didn't define it quickly. A month later on cross-examination. So, in other words, when he was originally asked the question, he said he didn't know the meaning of the word. He wasn't able to respond. A month later, of course, he can Google the word and get it on Wikipedia. Sure. I think the main point here, Your Honor, is that it's not a question — there's no requirement that a person have to know every historical figure, every vocabulary word. This is an uneducated farmer. He's not a person who is, you know, claims to be or ever has claimed to be deeply involved. His education level or his deep knowledge doesn't necessarily prove anything. He's not required to know. That's not the test, right? We're just looking at whether the IJ's determination that it was implausible, that he would have no idea about what he was doing for this rally, was implausible. And that seems to be supported by the evidence in the record. I don't see why we would say that the IJ's determination that it was implausible is not supported by the evidence. Well, the problem is that the IJ is speculating about what you need to know to be a political activist. This is kind of like if I'm a Christian — No, he's just passing out flyers for a rally for an individual who is a martyr, and he doesn't know the individual or what a martyr is. Right. I don't see why that's speculation. That just seems like common sense. Well, I guess the thing is, he was persecuted because he was passing out flyers for the rally. It doesn't — it's not relevant, particularly, how much he knows about the person. If he's Christian and he doesn't know every book in the Bible or he doesn't know a particular Christian figure, that doesn't mean he's not Christian or doesn't have a sincerely held belief. We don't require that people — there's no legal requirement that he know details about a person. More importantly, in this case, the agency, the board, said he didn't know who a key figurehead was. But there's no evidence in the record that Karnal Singh Isru is a key figurehead. I've been litigating cases on behalf of Sikhs for, you know, almost a decade. I had to Google that person. He's, in fact, not actually a key figurehead. But the point is, the record doesn't support a conclusion that he is a key figurehead or support the conclusion that Mr. Singh didn't know enough. It was the figurehead, though, that he was inviting people to a rally to celebrate. Well, there was a rally held in his honor, but whether he's a key figurehead of the courts is a separate question. And to go to Gurdwara, his temple, and to be told, we're going to have this rally, hey, can you pass out some flyers, now he's all of a sudden being required to know all the details of what this rally was publicizing. That's not — and in this court's — it's not in this — the jurisprudence. He's not required to know all the details. And so it's impermissible for the immigration judge or agency to speculate that, A, this person was a key figurehead, and, B, that his failure to know exactly who this person was — by the way, a go-in freedom fighter who died in the 50s — is not — doesn't make his claim for a desire to seek a separate state of Khalistan a sincerely held political belief that then led to his persecution. So that speculation has to be rejected. Similarly, the kinds of — whether he voted or didn't vote, those kinds of things are not required to make a political claim. He doesn't need to vote in order to be in support of the Maan party. But he never did vote, did he? He didn't. But — Didn't know who did vote or — he seems to be very ignorant of voting. Sure. But we're talking about a person who had minimal education, was a rural agrarian farmer, and — and we're talking about a party, the Maan party, who is a fringe party who rarely has candidates on the ballot that you could even vote for. So voting, he testified in the record that he perceived the movement as more of a social one, getting people to come together to support this cause, rather than participating in electoral politics. And that participation in electoral politics is not required of a political claimant. And so to speculate that if you don't vote, therefore, you can't have a political opinion is inappropriate for the agency. This Court can't uphold that. But I suppose the IJ can put all of this information together and disbelieve that this person was, in fact, a political activist. I mean, I think you're making the argument that there aren't any specific requirements that you know this or that, but that's not really what we're looking at here. We're looking at whether the IJ's adverse credibility determination was supported by substantial evidence, which is looking at all of the information in the record. So maybe you should focus on why there wasn't enough looking at all of the information put together as opposed to any specific requirements as to what an individual has to know. Sure. But I think the important thing for this Court is it can't uphold a finding where the IJ, her entire basis is her imposition on to somebody else, a rural, uneducated farmer from the Punjab, about what he must know or things he must do. He must vote. He must know who all these people are. Otherwise, he can't present a sincerely held belief. And that's not required by law. Additionally, her demeanor finding, similarly unsupported by the evidence. She said that the Board said that there's sporadic hesitations. So there's, okay, a hesitation here or there, sporadic, irregular. And the Board's decision doesn't actually cite any places where he hesitated. The IJ's decision does. She said that when was asked what was written in one of the pamphlets that he hesitated before answering, he was asked what kind of pamphlets, which is actually not what was written. And he said that his father had given them to him. And then when asked what was written, he testified very specifically it was, what was written in the pamphlets was a rally to support Karnil Singh Isroo and the murder. So when asked a specific question, he provided a specific answer. When asked a vague question, he hesitated and provided a less clear answer. And those kinds of things are normal conversation. That's not the kind of thing that can support a demeanor finding. Additionally, with regard to requests that questions be repeated, the agency concluded that there were frequent requests. He asked that 10 of 260, maybe 11, of 260 questions be repeated. That's not a frequent request for repetition. And I.J.'s characterization that he asked it that most questions be repeated is certainly not supported by the record. So, again, these, like, demeanor findings, this is an example of an immigration judge that's trying to hold things against a person that's not that are not supported by the record. And those are the things that this Court cannot sustain. I'll reserve the rest of my time. Roberts. Thank you. Thank you. May it please the Court. Good morning. My name is Lori Warlick, and I'm here on behalf of the Respondent Attorney General. The Court should deny this petition for review because the agency's adverse credibility determination in whole is supported by the record, and it certainly cannot be said that the record compels a contrary conclusion. Again, we're on review here and looking at substantial evidence, not how we or you or I may reweigh the evidence in the first instance. Turning to the specific findings that made, that composed the adverse credibility determination, first, I will address in the order that my colleague addressed the elements. First, the implausibility. As Your Honor explained, Judge Acuda, the common sense about what this applicant would likely know if he had been participating in these political activities as he had testified, was within the immigration judge's authority to consider. She never said that he must vote. He never – she never said he must know every detail of all these people. Instead, she simply said that she found it implausible that someone who was proclaimed to be devoted to this party and who was claimed to have been arrested on three different occasions due to his participation in this party wouldn't know the details of the things that led to those arrests. And, of course, he also said that his father was actively involved in this party for, I believe, 20 years before he joined the party. In fact, he was – he said that his father was arrested several times, maybe 20 years is not accurate, but for many years prior to his joining the party. His father was arrested several occasions and actually left India and went to England due to these arrests. However, he didn't – his father apparently did not encourage him to participate in the democratic process. He didn't say that his father encouraged him to vote prior to any time that he joined the Mon party. And, again, he didn't – I don't believe that he did have the opportunity to vote after joining the Mon party. I believe that he joined the Mon party shortly before the first arrest. But there's no indication that he engaged in the political process prior to that, and there's no indication in the record that his awareness or interest in the Mon party only began when he actually joined. What's the strongest evidence that you have that the Petitioner was not credible? Well, first of all, first, I'd like to point out that all of these components work together to mean the totality of the circumstances. And — But there must be one that's just the most egregious that you can point your finger at. Well, I would first – because of the deference that the Court owes to an immigration judge on demeanor findings, I would first rely on that, because even though a Petitioner's counsel has pointed out that the immigration judge did not recite with specificity all of the times that she felt that his answers were hesitant, the — first of all, that point was never exhausted before the agency, and so it's actually not within the jurisdiction of the Court to review. The prior counsel for Mr. Singh only alluded to a general challenge, the demeanor — or excuse me, the adverse credibility finding, and didn't go to the specifics. So, moreover, that portion is only one part of the demeanor finding. He also — Well, you know, what — I just have to ask you a very simple, direct question. If there's one aspect of this record here, I.J.'s decision upheld by the BIA, that just really demonstrates that this guy is not credible, what would it be? My personal first impression was that he didn't know who he was rallying for the second time he was arrested, that he couldn't — when he was first asked about this individual who was being honored by this rally, he didn't even know if he was dead or alive. He didn't know — Issuer? Is that what it was? Issuer, yes. Issuer? Sorry. And he didn't know if he was dead or alive. He didn't know what a martyr was, even though, I will point out, he used the word martyr at least four times in his declaration. This was submitted with his asylum application. And he didn't know — he eventually got there. He eventually said a definition of martyr that would qualify as a definition. But it seems that this rally was honoring him because he died for this cause, but he didn't know who it was. And, of course, he said his father was the one who told him to go out and distribute these pamphlets. But you would think after getting arrested, at least, he would have asked, who is this person? I mean, he never — he never inquired, or at least he never knew. And that more than supports the implausibility determination. We'll see. We're going back to demeanor finding for just a moment, Your Honors. He was — he asked — he did ask to repeat a number of questions. It was not most, but it was within most of the lines of questioning by the DHS counsel. He didn't ever ask for a question to be explained. He merely gave sort of bland — a bland statement. Can you repeat that? Can you repeat that? Can you repeat that? He never asked for anything to be repeated during direct examination. His attorney was the same. The DHS counsel was the same. The interpreter was the same. He never asked for anything to be repeated prior to that occasion. And his direct examination was, of course, on one date. And two months later, the cross was completed. And it looks from the transcript that they were about the same length of time. It wasn't that it was brief or that they — the immigration judge only called them back in to render the decision. There was — the cross was done two months later. And so the reference by Petitioner's counsel in the brief about perhaps the sporadic and hesitant — the comment about that sort of questioning, she couldn't provide — that she alluded to or speculated the immigration judge didn't provide an example of that because all this time had passed between the questioning and the decision. That's somewhat misleading because it wasn't, again — there was quite a bit of hearing left, so to speak, prior to the rendering of the decision, the oral decision the same day. He submitted some objective evidence.  I believe there were declarations, affidavits. Yes. He submitted some declarations and affidavits from — Okay. And country condition records. Right. Background evidence. He submitted affidavits or statements from his father, his uncle, the local Mon party leader, and a death certificate for his mother. And Petitioner suggests that the immigration judge didn't consider any of this besides the affidavits that the immigration judge gave reduced weight, which is quite typical that reduced weight is afforded to affidavits that are not where the affidavit is not available for cross-examination. And, in fact, the immigration judge told Mr. Singh, who was represented by counsel throughout proceedings, at the outset, if you submit these affidavits without presenting the person or making them available for cross-examination, they will receive reduced weight, but we proceeded nonetheless without making those arrangements. Do you have any case law that says that? Not off the top of my head, but I know that it's been upheld a number of times by this Court in decisions that — But have we ever said that just because the affidavit isn't subjected to cross-examination that it's — I'm not sure if this Court's ever specifically said that. It's just found that the immigration judge's reference to that was acceptable and upheld the determination of the corroboration findings in that way. But the point was that also the immigration judge, in fact, specifically addressed those and said, you know, these affidavits from these people warrant reduced weight because of the lack of cross, but also, for instance, she said the death certificate corroborated certain portions of his testimony that his mother died inadvertently in an accident related to the police coming to talk to her father about — his father, excuse me, about the Mon Party. But it didn't — the death certificate did not support the context or why the person — why his mother died. It just — it was a death certificate. And in the statement from the Mon Party leader, there was a lot of confusing testimony about whether this man even knew Mr. Singh, and he is the local sort of party leader, from what I understand. And he was — Mr. Singh was questioned about, well, do you know him personally? Well, we met a couple of times. Okay, so he doesn't really know you. How can — I mean, he submitted an affidavit for you, but then Mr. Singh said, well, I went everywhere with him, to all the rallies with him. And Petitioner argues that that clearly meant he just went in a group, but the fact that he's having to explain what he meant in hindsight suggests that the immigration judge, or at least counsels that the immigration judge's impression was not — what the man didn't necessarily know Mr. Singh. He was asked, if we call him and ask him who you are, would he know? And his answer was, could be, maybe. He didn't know. And so it's unclear how this affidavit could support his claim of having a well-founded fear of future persecution when he may not even know Mr. Singh or his specific circumstances. Of course, there are other aspects of the — of the adverse credibility finding that were there and — that were present and detailed in the agency's decisions. And under the totality of the circumstances, this Court should deny the petition for review. Thank you. So the totality of the circumstances, what does that mean? How does this Court do that? And I think the answer is it has to go through each thing to see if it's supported. It can't just look at it in a big bundle. It has to evaluate each single one. And as — as they fall off or are supported and which column they go into, it has to evaluate whether — But what's the best item that you have that would compel the Court to reverse the IJ? What's the best piece of evidence? I think here the — there's — the implausibility findings, because they're relying on so much speculation about what a person should or shouldn't know and what's — what's required of him, and the demeanor findings, which are just clearly not supported. Those combine together to show the Court very clearly that this judge was looking for ways to find the — this petitioner not credible. She was speculating about what he needed to know. She was characterizing sporadic hesitations and — and 10 questions as most asking for repetition all the time. Asking for a question to be repeated, especially in cross-examination where you're unfamiliar with the lawyer and you've never talked to a person, doesn't mean anything about your credibility. It just means you want to hear the question again. Asking for 10 of 260 questions to be repeated, those kinds of things, holding that against him and combined together, mean that this judge was searching for ways to undermine his credibility. And because those two things combined together do, it kind of undermines everything else. And under the totality, this at least needs to go back for a reevaluation once implausibility and demeanor are wiped out. Okay. Thank you, Your Honor. Thank you, Counsel. We appreciate your arguments this morning. And the matter is submitted.
judges: Siler, Paez, Ikuta